**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JODY MICHELLE HESTER, | ) | CASE NO. 5:22-CV-01996-CEH |
| | ) | |
| Plaintiff, | ) | CARMEN E. HENDERSON |
| | ) | UNITED STATES MAGISTRATE JUDGE |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION & ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

**I.      Introduction**

Plaintiff, Jody Michelle Hester ("Hester" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 21). For the reasons set forth below, the Court AFFIRMS the Commissioner of Social Security's nondisability finding and DISMISSES Plaintiff's Complaint.

**II.     Procedural History**

On April 30 and May 1, 2020, Claimant filed applications for SSI and DIB, alleging a disability onset date of July 22, 2014—the date after a prior ALJ decision denying previous applications. (ECF No. 10, PageID #: 51). The present applications were denied initially and upon reconsideration, and Hester requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On July 26, 2021, an ALJ held a hearing, during which Hester, represented by counsel, and an impartial vocational expert testified. (*Id.*). On September 28, 2021, the ALJ issued a written decision finding Claimant was not disabled. (*Id.* at PageID #: 51-66). The ALJ's decision became

final on September 15, 2022, when the Appeals Council declined further review. (*Id.* at PageID #: 39).

On November 3, 2022, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 12, 14, 16). Claimant asserts the following assignments of error:

> (1) The ALJ's RFC determination is the product of legal error and therefore not supported by substantial evidence because he failed to properly evaluate Plaintiff's subjective complaints.
>
> (2) The ALJ's RFC determination is the product of legal error where, after concluding that Plaintiff's mental impairments were severe, his RFC determination is not properly reconciled with the evidence and the opinions of record he determined were generally persuasive.

(ECF No. 12 at 1).

### III. Background

#### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:[1]

> In written reports and testimony, the claimant alleged disability primarily due to mental impairments. She reported limited ability to interact with others. Her ability to follow social cues is limited. It is difficult to talk and interact with others. Her ability to express emotion is limited. She has difficulty staying on task and maintaining pace. There is limited ability to withstand work pressures. The claimant has frequent panic attacks and symptoms of PTSD. There are 1-2 panic attacks per day. The panic attacks can last a few hours or a whole day. They are triggered by people and loud noises. Panic attacks occur at home from stress, worry, and nightmares. Counseling has been helpful. The claimant has not had suicidal ideation since late 2020. The claimant takes one psychiatric medication, for anxiety. This medication is a "major help." Methadone helps, but the claimant had a relapse a few months before the hearing. Prior to that, she had a few years of sobriety.

(ECF No. 10, PageID #: 56).

---

[1] Because Claimant only challenges the ALJ's decision with respect to her mental impairments, her testimony concerning her physical symptoms is not included here.

B.  **Relevant Medical Evidence**

After noting that there was "no medical evidence from the July 22, 2014 alleged onset date through June 2019," the ALJ summarized Claimant's health records and symptoms:

> In June 2019, the claimant was treated in the emergency department for hepatitis C and right upper quadrant pain. She followed up with a primary care source for hepatitis C and mental health symptoms. She reported depression, anxiety and panic attacks. She described past mental health treatment and medication, but denied any current treatment. She stated, "I just deal with it." An exam was positive for abdominal tenderness. There was also a skin infection. Physical exam was otherwise normal. The physician reviewed abnormal liver function tests and abnormal abdominal imaging from 2018. The claimant was prescribed Tylenol and referred to a gastroenterologist for hepatitis C. She was prescribed Celexa and Buspar and referred to counseling for mental symptoms. The claimant said she did not plan to fill her medications. (B4F/1-6) Testing remained consistent with a hepatitis C diagnosis at subsequent visits. (B9F/1- 16) However, there is no significant treatment for this condition.
>
> In March 2020, the claimant followed up with her primary care provider. She denied seeing any specialists since her last visit. She had an emergency visit for an infection. She was referred to psychiatry and psychology after reported a history of Asperger's syndrome. No psychiatric medications were prescribed. (B4F/8-13) The claimant's provider, Carolyn Kwan, MD, gave her a letter on March 10, 2020. She noted, "Jody Hester was seen in my clinic on 3/10/2020. She may return to work on 3/17/2020 for full activity. She should be limited to wiping tables, cash register, and delivering food. No mopping, cleaning washrooms, washing dishes, or food preparation." (B4F/17) This assessment is consistent with, and supported by, the record at that visit, when the claimant was treated for a wound infection. However, it is not persuasive for purposes of this decision because the work-related limits lasted only one week, far less than the 12 months required under the regulations.
>
> In July, August, and September 2020, the primary care provider prescribed Hydroxyzine for anxiety and referred the claimant to psychiatry. (B9F/209, 220, 229) In October 2020, the claimant told her primary care source that anxiety was better with medication and counseling. There were no acute complaints. She was referred to psychiatry for medication. (B9F/183) In November 2020, the claimant was again referred to psychiatry for Asperger's syndrome. (B9F/162)
>
> The claimant briefly treated at Coleman Professional Services. She had an intake visit in September 2020, followed by three counseling sessions. (B7F) At the intake visit in September 2020, she reported that she last treated with a psychiatrist in 2008. She received substance addiction treatment in Florida from 2016-2017, and again in Ohio since 2019. She reported a history of using benzodiazepines, alcohol, cocaine, hallucinogens, pain pills, amphetamine, benzodiazepines, cannabis,

3

methamphetamine and inhalants. She was on methadone treatment. The claimant reported past felonies convictions for fraud. She reported she could use public transportation. A mental status exam was normal except for flat affect and avoidant eye contact. The claimant was diagnosed with opiate use disorder in remission. She reported an Asperger's diagnosis, but she did not meet the diagnostic criteria for any autism spectrum disorder. (B7F/1- 23) Mental status exams were normal except for flat affect at counseling sessions in September, October and November 2020. (B7F/24-38) She has not returned since November 2020. (B7F)

Neuropsychologist Delphi Toth, PhD evaluated the claimant in late October and early November at the request of counselor Matt Brown of Coleman Professional Services. The claimant reported that she served in the military. As part of the service, she aided FEMA in the Hurricane Katrina rescue efforts. She experienced traumatic events during this work, leading to PTSD. Afterwards, she used drugs and committed non-violent crimes to pay for drugs, especially during a period of homelessness. She served time in prison for four felony charges arising from using a credit card stolen from her grandmother.

After prison, she worked in a series of jobs but each ended with her quitting in frustration after she was bullied. She attributed her social limits to an Asperger's syndrome diagnosis. A mental status exam was normal. The claimant had no impairment of attention. Her IQ score of WAIS-R testing was 107, in the upper end of the average range. Memory was intact. The results of the psychological testing showed significant anxiety with panic attacks, depression, a need for structure and predictability, distrust and suspicion of other people, extreme social discomfort and social withdrawal, and the likelihood of an aggressive response to threats. Dr. Toth noted, "Regarding her ability to work. it is clear that Ms. Hester has tried repeatedly and unsuccessfully. With each job, she was uncomfortable with her co-workers, was taunted and bullied, then she was overwhelmed and collapsed in tears, unable to go on. Her inability to function in successive jobs is most likely a reflection of her having more difficulty dealing with her Autism symptoms and extreme difficulty interacting with others. Given the timeline of her life and the results of the testing, It appears that her ability to function well, with her Asperger's, ended after her experience the military working with the victims of Hurricane Katrina. Unfortunately, the military did not treat her for PTSD, despite her repeated requests for treatment and help. After discharge, she had such severe unresolved psychological problems from the PTSD that she could no longer manage to function and she spiraled downhill into drugs. Currently, the PTSD remains unresolved, the Anxiety, Panic and Depression remain high, and her Autism is more of a problem that it had been in the past. Based on the current evaluation, it is my professional opinion that Ms. Hester should be approved for Disability based on multiple psychological diagnoses: Post-traumatic Stress Disorder, unresolved Generalized Anxiety, severe Panic Disorder, severe Major Depression, moderately severe Autism Spectrum Disorder, high functioning, Asperger's. Note that any of these diagnoses, alone, if severe enough, could be sufficient for a recommendation for disability. This woman has truly been struggling and I urge that she be approved

4

for Disability so she does not end up homeless again, without help." (B8F/1-2)

. . . .

The claimant had a hospital visit for right upper quadrant pain and nausea on December 2, 2020. She declined liver function tests, stating that she just needed a work note. She asked for Clonazepam/Klonopin, and indicated she was off this medicine for "a very lengthy time." She was given one dose, but the physician declined to give a prescription. (B10F/22-28) She returned to the emergency department on December 4, 2020. She stated that she had a hard time getting psychiatric medications and asked for a refill. She said that her psychologist was unable to prescribe, and her primary care source was unwilling to prescribe the requested medication. She denied any suicidal or homicidal ideation. The physician noted, "I did have a long discussion with patient that we cannot continue to prescribe [Klonopin] for her after today's visit. I did give her a prescription for 4 doses to get her through (un)til Monday when she can follow up with her psychiatrist as planned. The patient appears generally well. She is calm and pleasant." (B10F/33- 41) She returned to the emergency department on December 7, 2020, and again asked for Clonazepam/Klonopin. Vital signs were normal. She appeared well and was not suicidal. She was given a short refill of the requested medication. (B10F/45-48)

At a December 10, 2020 primary care visit, the claimant asked for a Klonopin refill. She reported that Cymbalta and Amitriptyline were not helpful. This request was denied, and the claimant was again referred to psychiatry. The claimant stated, "Thanks for nothing," then hung up before the telehealth visit was done. (B9F/135-137) On December 13, 2020, she returned to the emergency department and asked for Klonopin. Psychiatric clinical exam was normal. She stated she could not sleep and needed medication for anxiety and PTSD. She was given a prescription of Xanax to last until December 22nd . (B10F/53-59)

On January 3, 2021, there was another emergency department visit with a request for benzodiazepines. Clinical psychiatric exam was normal. The claimant was given one dose of medication. The physician noted that she had been filling multiple prescriptions of benzodiazepines from multiple providers. He advised the claimant to follow up with psychiatry and primary care, and educated her on why she would not be given further benzodiazepines. (B10F/66-71) The claimant returned the next day and asked for Xanax. Mood, affect, behavior, thought content and judgment were normal. She was denied the medication, and advised she could no longer obtain controlled substances in the emergency department. (B10F/76-84)

There are treatment records from New Horizons dated January, June and July 2021. (B11F) The claimant had a psychiatric evaluation in January 2021. She reported that she was recently fired from her job after two years. She wanted to wean off methadone and start Klonopin. Mental status exam was normal except for anxious mood. Dr. Ikemefuna Nkanginieme diagnosed PTSD, agoraphobia with panic

5

>disorder, opioid dependence, generalized anxiety disorder, obsessive-compulsive disorder, autistic disorder, and mood disorder. He prescribed Klonopin. (B11F/8-15) The next record from Horizons was in June 2021. The claimant had irritability and nightmares, but no panic attacks. Medication was "working well." She used breathing exercises. (B11F/7-8) In July 2021, symptoms were of a moderate severity. The claimant was pleasant, cooperative and friendly. She has intermittent panic attacks. She was "pleased with her medication regimen." No side effects were documented. She got along with family. She had a job interview, but she was not able to work the long hours required at the job. (B11F/5-7) There are no further records from this provider.

(ECF No. 10, PageID #: 57-60).

### C. Opinion Evidence at Issue

Two opinions are at issue on appeal—the June 2013 opinion of consultive examiner Dr. Gerald Hodan and the October 2020 opinion of consultive examiner Dr. Joshua Magleby. Of relevance, Hodan opined that Claimant was "capable of understanding and remembering instructions being given to her," but they "need to be brief, simply stated, or she will start to become anxious and not be able to maintain her focus of concentration in order to take in more detailed information;" she was "best suited for working by herself or with only a couple of other people in a work setting where stress and noise are kept at a minimum and she does not have to deal with the public on a regular basis;" and if forced to be around many people, she would "either not perform and get fired or just not show up for work anymore." (ECF No. 10 at PageID #: 359). Magleby opined that Claimant's "ability to understand, remember and carry out simple oral instructions is similar compared to other adults of the same age;" her "ability to relate to others, such as, peers, fellow workers and/or supervisors has been at least somewhat impaired;" and her "ability to withstand the mental stress and pressures associated with day-to-day work activity appears at least somewhat impaired." (*Id.* at PageID #: 499).

### IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2. The claimant has engaged in substantial gainful activity at times since July 22, 2014, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: Hepatitis C, Autism Spectrum Disorder, Panic Disorder with Agoraphobia, Post Traumatic Stress Disorder (PTSD), and Major Depressive Disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: She can frequently handle and finger with the bilateral upper extremities. She can frequently climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. The claimant is able to perform simple routine tasks and make simple workrelated decisions. She is limited to occasional interactions with supervisors, and occasional and superficial interactions with coworkers and the general public. The claimant could tolerate few changes in a routine work setting.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

. . . .

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. Substance addiction is not material to a finding of disability.

12. The claimant has not been under a disability, as defined in the Social Security Act, from July 22, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(ECF No. 10, PageID #: 54, 56, 63-65).

**V.      Law & Analysis**

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age,

8

education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises two issues on appeal, arguing (1) the ALJ failed to properly evaluate her subjective complaints and (2) the ALJ's RFC determination is not properly reconciled with the evidence and the opinions of record that he determined were generally persuasive. (ECF No. 12 at 1).

**1. The ALJ properly evaluated Claimant's subjective complaints.**

Claimant asserts that the ALJ made a "boilerplate statement" that her "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" but Claimant's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and the other evidence in the record." (ECF No. 12 at 16). Claimant argues that "[t]his boilerplate statement explains the extent to which the ALJ discredited Plaintiff's testimony, but critically fails to give his reasons for doing so," and the ALJ also "fails to give any explanation throughout the rest of his decision which could be construed as an explanation of this finding." (*Id.*). Claimant argues that "the ALJ has not explained why Plaintiff's gap in treatment or her ability to work at a sub shop demonstrates an

9

Case: 5:22-cv-01996-CEH Doc #: 19 Filed: 11/30/23 10 of 15. PageID #: 1029

ability for her to engage in work activity on a sustained and continuing basis." (*Id.* at 20). She asserts the ALJ's error was harmful "as he violated SSR 16-3's 'procedural safeguard' by failing to explain how he evaluated Plaintiff's symptoms." (*Id.*).

The Commissioner responds that "reading the decision in in [sic] its entirety with common sense makes apparent that, while the ALJ included some boilerplate language in the decision, he also provided specific reasons for why Plaintiff's allegations were not fully credited." (ECF No. 14 at 14). The Commissioner asserts that "[t]hose reasons, which included the lack of support found in the medical signs documented in the medical evidence; Plaintiff's daily activities, including her work activities; and the persuasive medical opinion evidence (Tr. 19-25), complied with the requirements of 20 C.F.R. §§ 404.1529(c) and 416.929(c) and SSR 16-3p and are supported by substantial evidence." (*Id.*).

Claimant replies that the ALJ's "boilerplate statements regarding Plaintiff's subjective complaints does not satisfy the articulation requirements" because the ALJ "engaged in no discussion of the 'other' factors contemplated [by] the agency's own two-step framework." (ECF No. 16 at 1).

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of HHS*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. § 404.1529(c); SSR 16-3p, 2017 WL 5180304.

Beyond medical evidence, SSR 16-3p sets forth seven factors that the ALJ should consider: daily activities; location, duration, frequency, and intensity of the pain or other symptoms; factors

10

that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of medication to alleviated pain or other symptoms; treatment other than medication; any measures other than treatment the individual uses to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions.  2017 WL 5180304 at *7-8. The ALJ need not analyze all seven factors but should show that she considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). SSR 16-3p states:

> [I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner.

The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms . . . and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304; *see also Felisky v. Bowen*, 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248–49), *report & recommendation adopted*, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Here, the ALJ concluded "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely

consistent with the medical evidence in the record." (ECF No. 10 at PageID #: 57). The ALJ specifically noted that there was no medical evidence from the July 22, 2014 alleged onset date through June 2019 and this "lack of any treatment records for greater than five years . . . and work activity both above and below SGA levels during this period of no treatment is inconsistent with allegations of disabling symptoms." (*Id.*). In summarizing Claimant's medical records, the ALJ cited a June 2019 emergency visit where Claimant indicated she was not receiving mental health treatment because she "just deal[t] with it;" an October 2020 visit where she told her primary care source that her anxiety was better with medication and counseling; mental status exams that were "normal except for flat affect" in September, October, and November 2020; and emergency room visits where Claimant requested Klonopin but had normal psychiatric exams or "appeared well." (*Id.* at PageID #: 57-60).

Additionally, the ALJ noted that Claimant's work at a sandwich shop "where she interacted with the public and delivered food on changing routes to different customers," her "ability to generally get along with treating sources, and the mental status exams throughout treatment" were consistent with "moderate limitations in interacting with others, concentration, persistence and pace, and adapting or managing oneself." (*Id.* at PageID #: 59). Elsewhere in the decision, the ALJ considered Claimant's daily activities, including caring for herself and her grandmother; walking her parent's dog; working six hours a day; cleaning, doing laundry, and preparing sandwiches; attending church; and shopping in stores. (*Id.* at PageID #: 55).

Further, the ALJ specifically explained his decision to only include mild limitations in the RFC:

> The limited specialized mental health treatment, delay in following up with referrals, and relatively normal mental status exams are not consistent with the level of limitations alleged. The claimant worked off and on since the 2014 alleged onset date, despite having a gap in treatment from 2014 until mid-2019. When she did

12

> seek mental health treatment, her condition improved without reported side effects. Overall, no more than mild limitations are supported.

(*Id.* at PageID #: 60).

Considering the record as a whole, the Court is satisfied that the ALJ considered the relevant evidence in accordance with SSR 16-3p and that a reasonable mind might accept that evidence as adequate to support the ALJ's credibility finding. As the Court will not reweigh the evidence when reviewing an ALJ's decision, no compelling reason exists for the Court to disturb the ALJ's credibility finding. *Cross*, 373 F. Supp. 2d at 732.

### 2. The RFC is consistent with the opinions the ALJ found persuasive.

Claimant argues the ALJ's RFC determination "is the product of legal error where, after concluding that Plaintiff's mental impairments were severe, his RFC determination is not properly reconciled with the evidence and the opinions of record he determined were generally persuasive." (ECF No. 12 at 22). Claimant asserts that while the ALJ "concluded that the opinions of consultive examiners, Dr. Hodan and Dr. Magleby were generally persuasive," "his RFC does not truly account for the limitations identified by either physician." (*Id.* at 23, 25). Claimant points specifically to the RFC's failure to include limitations that she works alone or only with a few coworkers, in an area where noise is kept to a minimum, and with social interaction that does not require her to relate to others or interact with the general public. (*Id.* at 25).

The Commissioner responds that, contrary to Claimant's argument, "the ALJ did not find Dr. Hodan's opinion persuasive" but rather found that "the 2013 opinion was not persuasive for purposes of evaluating Plaintiff's RFC on the current claim, in which Plaintiff only alleged disability since mid-2014." (ECF No. 14 at 17). The Commissioner argues that "the RFC accounts for the persuasive limitations identified by Dr. Magleby" because Dr. Magleby opined that Claimant's "abilities to relate to others and withstand the mental stress of pressures associated with

13

day-to-day work activity appears at least 'somewhat' impaired" but Claimant's mental capabilities were otherwise similar to other adults. (*Id.*). Overall, the Commissioner argues that the ALJ "considered and evaluated the medical, non-medical, and medical opinion evidence to formulate the RFC and Plaintiff has not shown that the RFC is not supported by substantial evidence." (*Id.* at 18).

Claimant replies that "[a]t the end of the day, the ALJ has an affirmative obligation to explain why limitations contained within an opinion he found persuasive were not incorporated into a claimant's RFC" and the ALJ's failure to do so here "renders his RFC determination the product of legal error." (ECF No. 16 at 4).

Concerning Hodan, the ALJ noted that this opinion was initially obtained in connection with Claimant's previous application. (ECF No. 10 at PageID #: 63). Contrary to Claimant's argument, the ALJ did not find this opinion persuasive, specifically indicating:

> These assessments are consistent with, and supported by, the record and findings at the time of the evaluations. However, they are not persuasive for the current application because they occurred a year or more before the current alleged onset date, and they do not address the claimant's functioning during the period relevant to the current decision.

(*Id.*). Because the ALJ did not find Hodan's opinion persuasive for this claim, he was not required to include Hodan's opined limitations in the RFC. *See Gasiewski v. Comm'r of Soc. Sec.*, No. 4:22-CV-002194, 2023 WL 5673034, at *11 (N.D. Ohio Aug. 14, 2023) (collecting cases), *report & recommendation adopted*, 2023 WL 5671936 (N.D. Ohio Sept. 1, 2023).

The ALJ considered Magelby's opinion that Claimant's ability to understand, remember, and carry out simple instructions was "similar compared to other adults the same age;" her ability to maintain attention and concentration was fairly average; but her ability to relate to others and withstand the mental stress and pressures associated with day-to-day work activity was "at least

14

somewhat impaired." (*Id.* at PageID #: 62). The ALJ found the opinion "generally persuasive and supportable, because it is consistent with the clinical exam, the activities reported on exam, and work after the alleged onset date." (*Id.*). While Claimant argues that the "RFC does not truly account for the limitations identified by either physician," she fails to point to *any* specific limitations that were included in Magelby's opinion.[2] *See Perrine v. Berryhill*, No. 1:18-cv-49, 2019 WL 1331597, at *7 (N.D. Ohio Mar. 25, 2019) ("Although an ALJ is not required to discuss every piece of evidence in the record to support her decision, an ALJ must explain why she did not include the limitations from an opinion of a medical source in her determination of the claimant's RFC."). Nor does she present any argument as to how the RFC—which limited Claimant to simple routine tasks, occasional interactions with supervisors, and occasional and superficial interactions with coworkers and the public and indicated she could tolerate few changes in a routine work setting—is inconsistent with Magelby's opinion.

The ALJ's decision makes clear that he considered all the evidence before him in crafting an RFC that incorporated limitations from the opinions that he found persuasive. The Court agrees with the Commissioner that the decision is supported by substantial evidence. As such, the Court must defer to the ALJ's decision.

## VI. Conclusion

Based on the foregoing, the Court AFFIRMS the Commissioner of the Social Security Administration's final decision denying Plaintiff benefits. Plaintiff's Complaint is DISMISSED.

Dated: November 30, 2023

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

[2] Notably, all the specific limitations Claimant argues about correlate to opinions expressed by Hodan. (*Compare* ECF No. 12 at 25 *with* ECF No. 10 at PageID #: 359).